(No. 31693.—

AMERICAN STEVEDORES COMPANY, INC., *et al.*, Defendants in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (FRIGIDAIRE SALES CORPORATION, Plaintiff in Error.)

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

Thomas C. Angerstein, George W. Angerstein, and Armand Chiappori, all of Chicago, for plaintiff in error.

R. H. Ross, and Klohr & Merrick, both of Chicago, (Hubert C. Merrick, of counsel,) for defendant in error American Stevedores Company, Inc.; and Leo C. Miller, of Chicago, (Julius Epstein, of counsel,) for defendant in error Stella Bagdonas.

Mr. Justice Gunn. delivered the opinion of the court:

This case arises upon an application for adjustment of a claim with the Industrial Commission filed March 24, 1948, by Stella Bagdonas, widow of Frank Bagdonas, making claim for compensation against American Stevedores

Company, Inc., hereinafter referred to as Stevedores, and Frigidaire Sales Corporation, hereinafter referred to as Frigidaire, on account of the death of Frank Bagdonas on May 3, 1947, resulting from injuries sustained on the preceding day upon the premises of Frigidaire. The arbitrator awarded compensation as against Stevedores, but dismissed Frigidaire, finding that the relationship of employee and employer did not exist between respondent's husband and Frigidaire, the petitioner herein. The decision of the arbitrator was affirmed by the Industrial Commission, but the superior court of Cook County, upon *certiorari* proceedings, affirmed the finding that the relation of employer and employee existed between Frank Bagdonas and Stevedores, but set aside the decision of the Industrial Commission that there was no employment relationship between Frank Bagdonas and Frigidaire, and thereupon made a finding of joint employment, and ordered Stevedores and Frigidaire to each pay respondent one half of the amount of compensation fixed by law. Frigidaire in the present case was allowed to prosecute a writ of error, but its petition for error urges only the question whether the superior court of Cook County erred in substituting its judgment for that of the Industrial Commission with respect to the employment relationship, and in a separate brief takes the additional position that there never was any claim of compensation made within six months of the date of the injury and death of Frank Bagdonas. If the position of Frigidaire is upheld upon the first contention it will be unnecessary to discuss the second.

The essential facts in the case are as follows: Frigidaire had offices on LaSalle Street in Chicago, and also owned a large warehouse in Argo, some ten miles west of the city. This warehouse was used for the storage of manufactured products of Frigidaire, such as refrigerators, stoves, ice-cream cabinets, etc., such products being manufactured other places and shipped to the warehouse for

storage until reshipped to other points. Frigidaire had a few regular employees upon its payroll at this warehouse, including a timekeeper, checker, foreman, and operator of a mobile hoist. When extra help was needed by petitioner for unloading freight cars or storage of merchandise it procured the same from Stevedores under an arrangement existing between them.

Stevedores, with offices in Chicago, was engaged in the business of furnishing stevedore labor for the loading and unloading of freight and trucks, and other merchandise in and out of warehouses. Stevedores selected all of the men and decided whether they were qualified to do the type of work contracted for, took their names, addresses, social security numbers, and information for withholding tax. After the arrangement between Stevedores and Frigidaire was made, the former would be called from time to time to furnish men who might work one day or several days, in moving heavy merchandise from and into the warehouse at Argo. When such men were used Frigidaire would keep their time, and at the close of each day's work copies of the time slips, showing the hours of work, were given to the straw boss of Stevedores to take to their office to enable them to pay the men. The men were paid by Stevedores at the rate of 95 cents per hour, but Frigidaire paid Stevedores $1.28 per hour for the same number of hours. The men were taken out to the jobs by a straw boss, and were placed at work under his directions. The superintendent of Frigidaire, under their arrangement, had no power to discharge the men individually, but if he was dissatisfied with any man he would indicate this to the straw boss, who would immediately telephone Stevedores and have another man sent to the job. Frank Bagdonas was hired by Stevedores on April 18, 1947, and paid 95 cents per hour. He worked until May 2, 1947, in petitioner's warehouse. On that day Frigidaire's operator of the mobile hoist requested Frank to assist in moving an

ice-cream cabinet, and while so doing he was so injured that he died the following day.

It is agreed the demand for compensation was made of Stevedores, but it is not agreed it was made of Frigidaire. However, the widow of Bagdonas testified that she asked the superintendent of Frigidaire at the coroner's inquest what they were going to do about it, and he replied, "Well, you are going to get $4800; the company is going to take care of you. You don't have to worry." The superintendent does not deny that this conversation took place, but says he does not recall it.

The first question for decision is whether Bagdonas was an employee of Frigidaire at the time of his injury, within the contemplation of the Workmen's Compensation Act. Petitioner claims that the finding of the arbitrator and of the commission that he was not an employee is a finding of fact, which is conclusive upon the reviewing court, unless against the manifest weight of the evidence. As a general rule this is true, but where the facts are not in dispute we have held that their effect may become a matter of law. (*Marsh* v. *Industrial Com.* 386 Ill. 11.) The facts are not in dispute in the present case, and therefore, the matter was open for the reviewing court to determine whether or not, as a matter of law, the admitted facts disclosed a relationship of employer and employee between Frigidaire and Bagdonas, and in its order the superior court recited that the decision of the Industrial Commission that the relationship of employer and employee did not exist between the decedent and Frigidaire was erroneous, contrary to the weight of the evidence, and contrary to law.

Situations similar to those in the instant case have occurred from time to time under the several Workmen's Compensation Acts, and have resulted in what is commonly, and perhaps erroneously, termed "The Loaned Servant or Employee Doctrine." At common law an employee in the general employment of one person may, with his consent, be

loaned to another for the performance of special work and become the employee of the person to whom he is loaned while performing such special service, and this principle of law has been applied to workmen's compensation cases. (*Allen-Garcia Co.* v. *Industrial Com.* 334 Ill. 390; *Scribner's case*, 231 Mass. 132, 120 N.E. 350; *Cayll* v. *Industrial Com.* 172 Wis. 554, 179 N.W. 771.) It is said that the test to determine whether the injured person is the employee of the general employer, or of the special employer, is whether the master has resigned control of the servant for the time being, in a work in which the servant was engaged at the time. In *Gaston* v. *Sharpe*, 179 Tenn. 609, 168 S.W. 2d 784, a city, on a WPA project, rented a dragline machine and an operator to run the same from the defendant, and the operator was to use the machine as directed by a project foreman, and upon the foreman's orders to let slack out in a rope of the machine the operator was injured. Under such facts the city became liable under the loaned servant doctrine.

The leading case in this State is that of *Allen-Garcia Co.* v. *Industrial Com.* 334 Ill. 390. In that case we held that the Workmen's Compensation Act should be liberally construed to bring persons within the term "employer-employee," and held that where a mining company contracted with an engineering company for certain work on a cost plus basis, and required the use of a crane, which the mining company secured from a third company, which furnished both it and the engineer, the operator of the crane became an employee of the engineering company using the crane, where he was subject to the direction of that company while using it, notwithstanding the coal company paid his wages. We followed and approved the *Allen-Garcia case* in *Fransen Construction Co.* v. *Industrial Com.* 384 Ill. 616.

Cases from other jurisdictions adhere to the same rule. In *Bidwell Coal Co.* v. *Davidson*, 187 Iowa, 809, 174 N.W.

592, a shot firer worked in a mine under an agreement between the miners and the owners, whereby he might be discharged by the miners, and was paid by deduction from ·the miners' pay. When such shot firer was injured in the mine he was considered an employee of the coal mine. In commenting upon the relationship the court said: "This thing is clear: This man was working in the mine, doing work for the company in the mine, with the knowledge and consent of the company, and for the purpose of more effectually carrying on the work in which the operators were engaged. He was engaged at the time he was injured in performing an indispensable part of the mining operations carried on in the mine. He was doing a part of the business of mining for which miners, were directly employed. The appellant knew that he was doing this work for them. If he had been employed directly by the company as a shot firer, the liability of the company would be apparent under the Workmen's Compensation Act. The fact that they had delegated to the miners the right to select him to do this particular work, indispensable to a proper carrying on of the work, does not change the relationship."

If this language were applied to the present situation it would fit the facts exactly, except for the character of the business being done. Frigidaire procured men to do the work of moving the large and heavy material in the warehouse through the agency of Stevedores, and Stevedores for the purpose merely became the selecting agency to pick the men, and the conduit through which they received their wages. The manager of Frigidaire testified, "We tell [the straw boss] what he's got to do," whether unloading a car or truck; also the lift man had authority to get a stevedore to help him with a cabinet. Likewise, the manager of Stevedores testified the straw boss had to place the men under Frigidaire's instructions, and that the initiation of discharging men came from Frigidaire. There

being no dispute about the facts, it becomes a question of law to be determined whether they come within the principle of loaned employees, as a matter of law and not as a matter of fact.

Determining the question involved is not one so simple as deciding whether the employee receives his money directly from the company for which the work is being done, or through another. The question is, is he doing an essential part of the work under the control of the particular employer? The details of the manner in which it is accomplished are. immaterial. In the instant case Bagdonas was requested by the operator of the hoist to assist him. While these men came to the Frigidaire plant under the directions of the straw boss, the personnel of Frigidaire told them what to do, either directly or through the straw boss, and they followed the directions thus given.

The evidence shows the principal purpose of the straw boss was to collect the time checks, and transport the men back and forth, and relieve Frigidaire of employees whose work did not suit. We think this is a case which comes clearly within the so-called "loaned employee" rule, whereby the borrowing employer becomes liable as an employer under the Workmen's Compensation Act in case of death or injury. Under the admitted facts in the case the action of the superior court in reversing the Industrial Commission and the decision of the arbitrator was justified and proper.

The other point raised by the petitioner is that no claim for compensation was made against Frigidaire within six months. This point is not argued in the petition for writ of error, but is almost the only ground of argument in the brief filed, after the writ of error was allowed. There is no finding made upon this question by the arbitrator or the Industrial Commission, but, as suggested above, the widow of Bagdonas testified that a few days after her husband's

death, at the coroner's inquest, she spoke to the superintendent of Frigidaire, asking him what they were going to do about it. It was quite obvious she was asking what they were going to do about the matter under consideration, *viz.,* the death of Bagdonas, and it is apparent from the answer, that she would be taken care of and get $4800, that Frigidaire recognized this as a claim for compensation. Although the superintendent professes to not remember the conversation, it still leaves her testimony substantially unopposed. In our opinion this would be sufficient to constitute a claim, for why would she be asking what they were going to do if she was not asking if they were going to pay compensation, and the answer of the superintendent, in effect, admits such claim by saying she is going to get $4800 as the amount of compensation.

Petitioner strenuously argues that a notice of attorney's lien filed by the attorney for the estate of Bagdonas does not constitute a notice of claim, but we do not see that this is material as to whether it constitutes a claim or otherwise, in view of the unopposed and undenied testimony of the widow. The original point upon which petitioner sought review was upon the question of employment, and the argument of the failure to make claim within six months appears to be an afterthought, and not presented in the petition for writ of error. We think the evidence of claim is sufficient in time and effect, and therefore the order of the superior court of Cook County was correct.

*American Stevedores Co.* v. *Industrial Com., ante,* p. 445, decided this day, holds that Stevedores was not a joint employer with Frigidaire, and reverses the judgment of the superior court and the award of the Industrial Commission insofar as Stevedores is concerned. Since Stevedores was not an employer of Bagdonas at the time he sustained the accidental injury resulting in his death, it follows, necessarily, that Frigidaire, the borrowing em-

458

ployer, was his sole employer and, hence, liable for the entire amount of compensation awarded rather than fifty per cent, only.

The judgment of the superior court of Cook County in favor of claimant and against Frigidaire for fifty per cent of the award must be reversed and the cause remanded, with directions to enter judgment in favor of claimant and against Frigidaire for the entire amount of the award.

*Reversed and remanded, with directions.*