(No. 39990.—

RAYMOND CONCRETE PILE COMPANY *et al.*, Appellants, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ROCCO MARINUCCI *et al.*, Appellee and Cross Appellants.)

*Opinion filed May 18, 1967.—Rehearing denied September 27, 1967.*

SWEENEY AND RIMAN, of Chicago, (GERALD O. SWEENEY, of counsel,) for appellants.

ABT, MEYERS, ALTMAN & CHERNOF, of Chicago, (HARRY W. ALTMAN, of counsel,) for appellee.

FRANCIS M. DISCIPIO and RICHARD H. WILLIAMS, both of Chicago, (GERALD A. FACCHINI, of counsel,) for cross appellants.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Rocco Marinucci was accidentally injured on January 17, 1956. He filed an application for adjustment of his claim against Raymond Concrete Pile Company (Raymond) and its insurer, appellants here, and Wilputte Company (Wilputte) and its insurer, cross appellants. The arbitrator applied the present section 1(a)4 of the Workmen's Compensation Act (Ill. Rev. Stat. 1965, chap. 48, par. 138.1(a)4), and found that Raymond was the borrowing employer and Wilputte the loaning employer of the claimant. He therefore awarded compensation against Raymond, with Wilputte liable only if Raymond did not pay. The statutory provision upon which the arbitrator based his award was not in effect at the time of the accident and apparently on that ground the Industrial Commission set the award aside. It found that Raymond was the employer,

awarded compensation against it, and dismissed the claim as to Wilputte and its insurer. On *certiorari* the circuit court of Cook County held that Raymond and Wilputte were jointly liable for the compensation awarded by the Commission. Raymond appealed, and Wilputte cross-appealed.

Marinucci was hired by Wilputte as an "oiler" for a crane mounted on a truck. His duties included driving the truck, greasing the equipment and setting the "outriggers", which are braces used to prevent the crane from tipping. He and Charles Hughes, the crane operator, had been assigned to a particular construction project. There they had been directed by Wilputte's supervisory employees to report to various subcontractors working on the job site, and do the work directed by the subcontractors. On the day of the accident they were directed to report to the supervising employee or "pusher" for Raymond, one of the subcontractors. The pusher wanted two truck loads of "I" beams and cores unloaded, and he directed the men where to place the crane. It was blocked with outriggers and the trucks were almost completely unloaded when the pusher ordered Marinucci to move the crane ahead about 30 feet to pick up the last "I" beam. When the crane had been moved, Marinucci started to reset the outriggers, but the pusher said that it was unnecessary to do so. When Hughes and Marinucci protested that the outriggers were necessary, the pusher told them to "either get up there or get your time." During this discussion John Courtney, master mechanic for Wilputte and the man who had hired Marinucci, came by and asked why the truck was not being unloaded. Courtney then told Marinucci to get in the cab and mind his own business or "get my money and get lost." He told Hughes to "make the pick or go home". The men made the pick without outrigging, and the crane tipped over, injuring both Hughes and Marinucci.

Both employees filed a common-law action against Raymond and Interlake Iron Corporation, for whom the con-

struction work was being done. Raymond's answer denied the negligence alleged in the complaint, and as an affirmative defense alleged that at the time of the occurrence it was the employer of the plaintiffs, whose claims were therefore barred by the Workmen's Compensation Act. The jury returned a general verdict for the defendants, but also answered in the negative the following special interrogatory: "Do you find from the evidence that the plaintiffs * * * were employees of the Raymond Concrete Pile Company at the time of the occurrence in question?"

Raymond contends that the jury's negative answer to the interrogatory operates as an estoppel by verdict, and precludes a finding in this proceeding under the Workmen's Compensation Act that Raymond was the employer. It concedes that the jury's answer can not bind Wilputte, for Wilputte was not a party to the common-law action. But it argues that whatever may be the case as to Wilputte, the determination is conclusive as to Marinucci. One difficulty with this position is that the effect of the answer to the interrogatory can not be split in the manner that Raymond suggests, for, upon the evidence in this case, if Raymond was not the employer, Wilputte must have been. There is no other possibility. And if Raymond's contention is accepted, Wilputte's status as Marinucci's employer has been determined in a proceeding to which it was not a party. Furthermore, it does not appear that the present issue was involved in the jury's answer. The record before us does not show the evidence that was before the jury or the instructions under which it acted. Its answer may have been based solely on the circumstances that Raymond neither hired nor paid Marinucci, but those circumstances are not controlling here. We hold, therefore, that the jury's answer in the common-law action did not determine the rights of the parties in the present proceeding.

In several cases this court has affirmed the imposition of joint liability upon employers, but so far as we are aware

the cases in which this has been done involved dual employment, in the sense that the employee was hired by two or more employers to perform services for them. (*Hudson* v. *Industrial Com.*, 387 Ill. 228; *Krawiec* v. *Industrial Com.*, 372 Ill. 560; *Stresenreuter, Inc.* v. *Industrial Com.*, 322 Ill. 187; *Page Engineering Co.* v. *Industrial Com.*, 322 Ill. 60.) In cases involving loaned employees, liability has been imposed upon one employer or the other, and not upon both jointly. *American Stevedores Co.* v. *Industrial Com.*, 408 Ill. 449; *Fransen Construction Co.* v. *Industrial Com.*, 384 Ill. 616: *Allen-Garcia Co.* v. *Industrial Com.*, 334 Ill. 390.

It has been suggested that this result gives less than adequate recognition to the right of an employee to determine with whom he will contract, and may result in a change of employers without his consent. (1A Larson, Workmen's Compensation, sec. 48.10.) The present statute meets this objection, at least in part, by providing that when a loaned employee is injured in the employment of a borrowing employer the liability of the employers is joint and several. The loaning employer is not released from liability under the Act, but if he provides benefits or makes payments to one who is "in the employment" of the borrowing employer, he is given a statutory right of reimbursement from the borrowing employer. (Ill. Rev. Stat. 1965, chap. 48, par. 138.1.) This statutory provision, however, did not become effective until July 11, 1957, after the injury in the present case had occurred.

The contractual relations between Wilputte and Raymond do not appear in the record. While it seems likely that both of them benefited from the specific work that was being done, it is certain that Raymond did, since that work was primarily its responsibility. In identifying the employer of a loaned employee the dominant circumstance has been the right to control the manner in which the work is to be done. (See *e.g., American Stevedores Co.* v. *Industrial Com.*, 408 Ill. 449, 454; *Fransen Construction Co.* v. *Industrial Com.*,

384 Ill. 616; *Allen-Garcia Co.* v. *Industrial Com.,* 334 Ill. 390.) Stated in more abstract terms, the most significant inquiry has concerned the extent to which the loaning employer delegated to the borrowing employer the right to control the manner of doing the work. Often the determination must be made on the basis of inferences from evidence that bears only indirectly upon that issue. In this case the evidence bears directly upon the issue, but it will support conflicting inferences.

Both employers specifically commanded that the crane be operated without the use of outriggers, and these commands were directly responsible for the injuries suffered by the employees. Each employer threatened discharge unless the command was obeyed. It is argued that Raymond's command was ineffective because the men refused to operate without outriggers until they were ordered.to do so by Courtney, Wilputte's master mechanic. Courtney's command can be regarded as a resumption of control by Wilputte. But it can also be regarded as a reiteration of the initial delegation of control to Raymond,—a confirmation of the fact that it was the duty of the employees to comply with the commands given them by Raymond. This is the inference that the Commission drew, and in numerous cases we have held that "a court may not discard permissible inferences drawn by the Commission merely because it might have drawn other reasonable inferences from the same facts." *Rysdon Products Co.* v. *Industrial Com.,* 34 Ill.2d 326, 330; see also, *Mechanics Universal Joint Div., Borg-Warner Corp.* v. *Industrial Com.,* 21 Ill.2d 535, 538; *Hunter Packing Co.* v. *Industrial Com.,* 1 Ill.2d 99, 107; *Electro-Motive Div. General Motors Corp.* v. *Industrial Com.,* 411 Ill. 132, 140.

The judgment of the circuit court of Cook County is reversed, and the award of the Industrial Commission is confirmed.

*Judgment reversed; award confirmed.*