LEROY DOWELL, Plaintiff-Appellant, *v.* WILLIAM H. & NELSON CUNLIFF COMPANY, Defendant-Appellee.

(No. 74-181;

Fifth District—March 7, 1975.

Joseph B. McDonnell, of Dixon & McDonnell, of Belleville, for appellant.

John F. O'Connell, of O'Connell & Waller, of Belleville, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The plaintiff, Leroy Dowell, brought this action in the circuit court of St. Clair County for injuries and damages sustained as a result of an incident that occurred while he was employed on a construction project. The plaintiff alleged that the injuries and damages were occasioned by the negligence of the defendant, William H. and Nelson Cunliff Company, a corporation, hereafter referred to as Cunliff, the general contractor, and the defendants, East St. Louis Stone Company, the owner of the project site, and the Illinois Power Company, as owner of certain electrical transmission lines.

The suit was filed on June 21, 1972. The defendant, Cunliff, filed its answer on August 2, 1972. On August 29, 1972, depositions were taken of the plaintiff and his coworker, Lloyd E. Meyer. Thereafter on February 3, 1973, the defendant, Cunliff, moved for summary judgment on the ground that the plaintiff was an employee of the defendant, Cunliff, at the time of the incident and was, therefore, limited in his recovery to the provisions of the Illinois Workmen's Compensation Act. This motion was granted by order entered on August 31, 1973. On October 1, 1973, the plaintiff filed a motion to vacate the order granting summary judgment. Attached thereto was the affidavit of Roy Taylor, president of Taylor Excavating Company, plaintiff's original employer, which stated in substance a series of facts upon which could be based a finding that the

plaintiff remained in the employ of Taylor Excavating Company, and was not in the employ of defendant, Cunliff, at the time of the occurrence out of which this action grew. On December 28, 1973, the court below withdrew the original order granting the summary judgment and granted the plaintiff's motion to vacate. The stated reason was "that the plaintiff could still be in the employ of the Taylor Excavating Company and the facts of employment would be a question of fact for the jury to decide."

Thereafter, the defendant, Cunliff, filed a third-party complaint against the Taylor Excavating Company seeking indemnification for any judgment that may be entered against the defendant, Cunliff. The Taylor Excavating Company then filed a motion to dismiss, asserting that the plaintiff was, at all times pertinent hereto, under the exclusive direction of the defendant, Cunliff.

The defendant, Cunliff, then once again filed a motion for summary judgment. This motion reasserted the previously filed affidavits and depositions, and "* * * further would point out to the Court in support of this Motion that the third party defendant, Taylor Excavating Company, Inc., a corporation, has, in substance and in fact, confessed the motion for summary judgment, which heretofore they had resisted through the Affidavit of their President, Roy Taylor."

On April 29, 1974, the court granted the defendant's motion for summary judgment, "for the reasons set forth therein."

The plaintiff thereafter requested, pursuant to Supreme Court Rule 302(a), that the trial court make an express finding that there was no just reason for delaying enforcement of or appeal from its order. This the court did by an amended judgment order. From the order granting defendant Cunliff's second motion for summary judgment, as amended, this appeal is brought.

The facts which precipitated this action are as follows. The plaintiff, a 39-year-old male, was an oiler on a crane crew. The crew consisted of the plaintiff and Lloyd E. Meyer as the operator of the crane. The crane was owned by the Taylor Excavating Company, and the two were "employed" by Taylor in that they were orally leased by Taylor Excavating Company along with the crane to other contractors. The individuals were paid by and directed to report for work by Taylor Excavating Company.

On July 13, 1970, the plaintiff reported to Taylor Excavating Company and was directed to the site of the East St. Louis Stone Company at Dupo, Illinois. The plaintiff and Mr. Meyer took the crane on a Taylor Excavating Company truck and moved to the site. The crane had been disassembled for transporting over highways. The plaintiff and the opera-

tor were assisting an ironworkers crew at the construction site in re-assembling the crane when the plaintiff was injured.

The injury to the plaintiff occurred when the "boom" of the crane came in proximity to an electrical transmission line as the "boom" was being hoisted. It is alleged that the "boom" did not touch the line, but the electrical charge "arced" and thereby injured the plaintiff. The plaintiff was knocked unconscious and was burned on the right index and middle fingers and the great toe on the right foot. The index finger and great toe were subsequently amputated. The plaintiff is seeking $200,000 in damages for those and lesser injuries.

The plaintiff alleges that at the time of the occurrence he was an employee of Taylor Excavating Company, and this assertion was denied by the defendant, Cunliff. The plaintiff testified in his deposition, among other things, that he had worked for Taylor for 12 years, that Taylor rents out the crane and the crew, that he, as operator, took signals (directions) from Cunliff ironworkers, that he had assisted the ironworkers in assembling the crane, that he had been told by one of the workers where not to park the crane for assembly, and that the ironworkers gave the signal to raise the boom when the injury was incurred.

The plaintiff stated that the ironworker's foreman was in charge of the rig and that Meyer, the operator, was his boss. He stated that in a sense he was working for Cunliff because he was "under their direction to do what they tell you to do."

Meyer, testifying by deposition, stated that he was on Taylor's payroll, that the crane and crew were leased to Cunliff, that he had worked for Taylor for 15 years, that he operated the crane at the direction of the ironworkers, that he had seen no powerlines, and that the ironworkers gave the signal to raise the crane where the incident occurred.

By way of deposition, the following was asked and Meyer answered:

"Q. You say that the crane company, the Taylor Excavating Company, pays you and that is all you have to do with them when you go on the job?

A. That is all unless we think we are overloaded. We can refuse to pick up a load if it is too much.

Q. You do have some discretion?

A. Your own good solid judgment.

Q. If you were overloaded and there was a dispute and you said, 'I won't go on', would they have the power to say, 'You are fired, get off the job?'

A. I suppose they would, but usually, anybody with any good common sense when a man says you can't pick it up, you can't

pick it up. Why turn a crane over on something if a man told you no."

Finally, Meyer stated that he left the job that same day because he was nervous and that another crew had replaced him and the plaintiff.

Charles H. Kennedy was job superintendent for the defendant and he supplied an affidavit which was given in support of the defendant's motion for summary judgment. Mr. Kennedy affirmed that the crane crew was part of the ironworkers crew, which he could direct and correct in details of their work, and "could have fired them and sent them back to Taylor Excavating Company, from whom we hired them, just as I could fire any of the men working under me and sent them back to the union hall."

Robert Calhoun was the project engineer and assistant vice-president of defendant Cunliff. He also supplied an affidavit and stated therein that the equipment and employees "once they come to our construction site are in the complete control of Cunliff."

In support of its motion to vacate, the plaintiff submitted an affidavit by Roy Taylor, president of Taylor Excavating Company, which in part affirmed:

> "* * * the company enters into agreements, usually verbal, with other contractors whereby we agree to furnish equipment and men to operate the equipment to such other contractors for a rental fee, which covers the wages of the men and the rental of the equipment. This is common in the construction industry. Even on such occasions, we still consider the men to be our employees, and we expect them to do what we tell them above all others, since they are employed by us. I also know that if our machinery does any damage while being rented to any such other contractor for such a job, that we would be expected to pay for the damage caused."

and later in the affidavit, "They remained regular employees of Taylor Excavating Company and subject to assignment or other jobs handled by us."

■■ There can be no dispute as to when a summary judgment is appropriate. As has been said before:

> "Summary judgment procedure is not designed to try an issue of fact but rather to determine whether one exists. If, upon examination of the record it can be fairly said that there does exist a triable issue of fact then the motion for summary judgment should be denied." *Fletcher v. Boxx* (5th Dist. 1973), 10 Ill.App.3d 928, 929, 295 N.E.2d 248, 249.

This rule may also be stated in other terms, as was done in *Weber v.*

*Northern Illinois Gas Company* (1st Dist. 1973), 10 Ill.App.3d 625, 635, 295 N.E.2d 41, 47:

> "The purpose of summary judgment procedure is not to try an issue of fact but rather to determine whether one exists [citation] and the record is to be tested under the same standard as a directed verdict: Does all the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favor the movant, that any other verdict would not be permitted to stand? (*Lumbermens Mutual Casualty Co. v. Poths*, 104 Ill.App.2d 80, 243 N.E.2d 40.)"

This appeal must, therefore, determine if there is a triable issue of fact presented on this record.

The plaintiff relies primarily upon the case of *M & M Electric Co. v. Industrial Com.* 57 Ill.2d 113, 311 N.E.2d 161. This case involves an electrician who was injured while working for his employer on the premises of another. The plaintiff there, McGinn, brought the action against M & M Electric and its workmen's compensation insurer based on an accident that occurred at a steel mill of Northwestern Steel. While on the job, McGinn fell almost 30 feet and suffered injury. *M & M* brought Northwestern in by way of a cross-claim alleging that Northwestern was a "borrowing" employer and therefore primarily liable.

■■ The Industrial Commission found McGinn not to be a loaned employee. The circuit court reversed the decision of the Commission, holding that Northwestern was a borrowing employer "as a matter of law." The supreme court reversed the circuit court, and the decision of the Industrial Commission was reinstated.

The court states at page 116:

> "We have previously recognized that the primary test for establishing a loaned-employee relationship is the right to control."

And further:

> "There are many different considerations which may be applicable to the loaned-employee question. (See generally Restatement (Second) of Agency, section 220, p. 485 *et seq.*) Due to the large number of factors which may be relevant to any factual situation, we have held that generally the existence of the loaned-employee relationship is a question of fact, and therefore a question for the Industrial Commission. (*Gundich v. Emerson-Comstock Co.* (1961), 21 Ill.2d 117.) The test for whether or not a question is one of law or fact in such cases was set forth in *Henry v. Industrial Com.* (1952), 412 Ill. 279. At page 284 we stated: 'If the undisputed facts upon any issue permit more than one reasonable inference to be drawn therefrom, the determination of the issue presents a question of fact, and the conclusion of the commission in decid-

ing the question will not be disturbed upon review; only if the undisputed facts are susceptible of but a single inference can the question be characterized as one of law [citations].' A court may reverse a decision of the Industrial Commission as to a finding of fact only when the decision is against the manifest weight of the evidence. *Wilson v. Industrial Com.* (1972), 51 Ill. 2d 522, 524; *Wooldridge v. Industrial Com.* (1970), 47 Ill.2d 244, 246." (57 Ill.2d 113, 117.)

Then the court stated:

"McGinn was a general employee of M & M, where he worked as an apprentice electrician. He was paid only by M & M, took work orders only from the M & M foreman, worked where assigned by M & M and traveled to and from work in an M & M truck. It is agreed that he never explicitly consented to become an employee of Northwestern. McGinn could not be considered an employee of Northwestern unless it can be shown that the very nature of the project gave control over him to Northwestern, and that he implicitly knew of and agreed to this change of control. Such circumstances were not shown by the evidence." 57 Ill.2d 113, 118.

We feel compelled to note that although the factual situation of *M & M* is not identical it is sufficiently close to require our finding that the facts of the present case are insufficient to find that, as a matter of law, the plaintiff was a loaned employee.

The defendant correctly points out that it did have control over the employee, but it is not agreed or certain as to the extent of such control. Thus, the question of whether the defendant, Cunliff, or Taylor Excavating Company was plaintiff's employer at the time of the injury complained of is a fact which can, under the circumstances of this case, be decided only by the jury.

The defendant urges that we consider as determinative the cases of *American Stevedores Co. v. Industrial Com.,* 408 Ill. 449, 97 N.E.2d 325, and *Henry v. Industrial Com.,* 412 Ill. 279, 106 N.E.2d 185. In these cases the supreme court reversed the Industrial Commission, holding that the employees were, as a matter of law, loaned employees. We find that the facts of those two cases are quite dissimilar to those of the present case. The court determined in both cases that the employer was only a conduit through which employees were supplied to the entity actually providing employment. Both of those cases were cited in the *M & M* case.

We cannot accept the defendant, Cunliff's, contention that the plaintiff was wholly subject to the control and direction of Cunliff, as a matter of law. We note that the plaintiff worked for the operator Meyer, and that Meyer could refuse to lift certain loads although if he did he might be

"run off." But being "run off" meant back to Taylor Excavating Company. Also, we note that the plaintiff was paid by Taylor, that he was directed where to go by Taylor, that he traveled to and from work in Taylor equipment, and that he never explicitly consented to become an employee of Cunliff. And, finally, from the depositions, pleadings and competent affidavits, it is not clear that the very nature of the project gave control to Cunliff, and that plaintiff implicitly knew of and agreed to such charge and control.

■■ It, therefore, being our opinion that on an examination of this record it can fairly be said that there does exist a triable issue of fact on the question of who was the plaintiff's employer at the time of the occurrence, we reverse the order of the circuit court granting summary judgment to the defendant, Cunliff, and remand this cause for further proceedings not inconsistent with this opinion.

JONES, P. J., and KARNS, J., concur.