BOBBY E. NUTT, Plaintiff-Appellant, *v.* PIERCE WASTE OIL SERVICE, INC., *et al.,* Defendants-Appellees.

Third District   No. 82-308

Opinion filed February 15, 1983.

Jay H. Janssen and Jerelyn D. Maher, both of Peoria, for appellant.

Heyl, Royster, Voelker & Allen and Cassidy, Cassidy & Mueller, both of Peoria (Rex K. Kinder and Bradford B. Ingram, of counsel), for appellees.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff Bobby E. Nutt filed a four-count complaint seeking compensatory and exemplary damages for personal injuries allegedly occasioned by the negligence of defendants Pierce Waste Oil Services, Inc., and Central Refining, Inc. Defendants responded with the affirmative defense that plaintiff was barred from the common law action by reason of the exclusive remedy provided under the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*). After a hearing on the merits of the defense, the circuit court of Peoria County entered summary judgment in defendants' favor.

The facts are undisputed. At the time plaintiff received his injuries, he considered himself an employee of Industrial Fuels, Inc. Industrial Fuels paid plaintiff, withheld his Federal and State income taxes, maintained and administered his group insurance plan, and identified itself as his employer before the Industrial Commission. Its business purpose was to process waste oil into fuel oil, which it sold and transported, and to perform mechanical work upon the transporting vehicles. At the time of his injury, plaintiff was performing such mechanical work at a garage owned by Industrial Fuels and in which all mechanical tools were located.

Pierce Waste Oil Services' business purpose was to pick up waste oil at service stations and garages and transport it for processing. Central Refining's business purpose was to process waste oil into motor oil. The three companies had separate addresses but operated at a common eight-acre site under common ownership. The vehicle on which plaintiff was working at the time of his injury was owned by Pierce and cleaned by Central Refining. Each defendant was asked by interrogatory whether it employed plaintiff at the time of his injury. Central Refining answered "No." Pierce responded,

"No, Plaintiff was employed by Industrial Fuels, Inc., as a mechanic, his duties were to maintain and repair equipment owned by Pierce Waste Oil Services, Inc., because Industrial Fuels, Inc., does not own any equipment."

Presented for our review are the issues of whether plaintiff was a joint or loaned employee of, or to, defendants. While defendants have elected to respond to only the first of these issues, their interrelationship precludes a waiver of the alternate issue.

Considering first the issue of whether plaintiff was a joint employee of Industrial Fuels and defendants, a review of the Illinois de-

cisions on this question reveals situations which differ from the one at bar. In *Page Engineering Co. v. Industrial Com.* (1926), 322 Ill. 60, 152 N.E. 483, a night watchman was required to watch the properties of two companies and was paid equally by each. In *Frederick A. Stresenreuter, Inc. v. Industrial Com.* (1926), 322 Ill. 187, 152 N.E. 548, the situation was the same. In *Krawiec v. Industrial Com.* (1939), 372 Ill. 560, 25 N.E.2d 27, a group of citizens and merchants incorporated an association and recommended plaintiff's decedent as a patrolman. He was paid by the association and the city of Chicago Heights, which also furnished a car. In *Hudson v. Industrial Com.* (1944), 387 Ill. 228, 56 N.E.2d 423, plaintiffs' decedent was paid by an individual employer and a bus company, of which the employer was manager and principal stock owner. In each of these cases, it was found that the employee was serving each of his employers and was a joint employee. In *American Stevedores Co. v. Industrial Com.* (1951), 408 Ill. 445, 97 N.E.2d 329, the plaintiff hired the decedent employee and was a conduit through which he received his wages. Another company was served and exercised complete control over him. In *City of Wilmington v. Industrial Com.* (1972), 52 Ill. 2d 587, 289 N.E.2d 418, the deceased employee was employed and paid by a technical institute. During evenings and weekends, he and others used institute machinery for the benefit of plaintiff, who did not pay them. In each of the latter two cases, one employer was served and no joint employment was found.

Defendants place particular emphasis on *Freeman v. Augustine's Inc.* (1977), 46 Ill. App. 3d 230, 360 N.E.2d 1245, a decision which considered the possibility of joint or borrowed employment. The plaintiff had been hired as a maid by Augustine's Motor Lodge, underwent an operation, and became a miscellaneous worker. Although she continued to be paid by the motor lodge, her sole duty was to work in a laundry room located in a restaurant owned by defendant, where she worked under defendant's direction. Both the motor lodge, apparently owned by Marra Corporation (see *Freeman v. Augustine's Inc.* (1977), 46 Ill. App. 3d 230, 238, 360 N.E.2d 1245, 1251 (dissenting opinion)), and the restaurant benefited from her work. The court concluded:

> "The foregoing facts indicate that plaintiff was under defendant's direction and control at the time of her injury, that plaintiff agreed to work under defendant's direction, and that defendant had the power to discharge plaintiff by barring her from the laundry room (see *Fransen Construction Co. v. Industrial Com.*, 384 Ill. 616, 627-28, 52 N.E.2d 241, 246 (1943)). These factors all indicate that plaintiff was a loaned employee.

On the other hand, both the defendant and Augustine's Motor Lodge benefitted from plaintiff's work. The facts also indicate that plaintiff worked in the laundry room for approximately two years and would have continued indefinitely in that capacity were it not for her injury. Both of those factors might lead one to conclude that plaintiff was a joint employee. Plaintiff's position differs from that of a joint employee, however, because she was hired and paid only by Augustine's Motor Lodge and was under the direction and control of only the defendant. Nonetheless plaintiff was voluntarily and permanently employed in defendant's establishment, subject to defendant's direction and control. We, therefore, conclude that defendant was plaintiff's 'employer' under the Workmen's Compensation Act even though the relationship between plaintiff and defendant did not encompass all the characteristics of either joint or loaned employment. In other words, an implied employment contract existed between plaintiff and defendant." *Freeman v. Augustine's Inc.* (1977), 46 Ill. App. 3d 230, 235-36, 360 N.E.2d 1245, 1249.

■ In the case at bar, plaintiff was performing his customary duties at Industrial Fuels, where the mechanic's function for the three companies was centralized. Plaintiff testified that a Pierce employee told him that a baffle in the Pierce tanker needed a hole cut in it. He then proceeded to examine the project and begin work on it. There is no indication that the Pierce employee directed or controlled the work, nor that he possessed the power to discharge him. Martin Pierce, a corporate officer of all three concerns, testified that he spoke to plaintiff about the project. While Pierce unquestionably could direct and control the work, as well as discharge plaintiff, these were his powers as an officer of Industrial Fuels. While these are factors more relevant to a loaned employee consideration, they merit notice. Additional considerations are the facts that the work was performed on the premises of Industrial Fuels, and plaintiff was exclusively compensated by Industrial Fuels. The first of these facts renders *Freeman* inapposite. The latter is significant as in none of the cited supreme court cases has joint employment been found where salary was provided on a unilateral basis. Where control of an employee is shared by two employers and both benefit from the work, a worker is considered to be an employee of both. (*American Stevedores Co. v. Industrial Com.* (1951), 408 Ill. 445, 97 N.E.2d 329.) Here is present only mutual benefit, benefit which inures as a result of a multicorporate division of responsibility. Under these specific facts, we decline to hold

plaintiff was a joint employee.

■ Considering second whether plaintiff was a loaned employee, we note part of the court's consideration of this issue in *Freeman*:

"In most of the cases finding the existence of a loaned employee relationship, the employee was assigned to perform special services for the borrowing employer. In *Fransen Construction Co. v. Industrial Com.*, 384 Ill. 616, 52 N.E.2d 241 (1943), the supreme court defined a loaned employee by saying:

'*** an employee in the general employment of one person may, with his consent, be loaned to another for the performance of *special work* and become the employee of the person to whom he is loaned while performing such *special services*. [Citation.]' (384 Ill. 616, 624-25, 52 N.E.2d 241, 245.) (Emphasis added.)

We agree with the assumption, implicit in the foregoing definition, that the loaned employee relationship must generally be of a temporary nature. To speak of a 'permanently loaned employee' is self-contradictory." (*Freeman v. Augustine's Inc.* (1977), 46 Ill. App. 3d 230, 234, 360 N.E.2d 1245, 1248.)

In the case at bar, plaintiff had worked as an Industrial Fuels mechanic for his entire six-year term of employment. This being the case, we also decline to hold him a loaned employee.

As noted by the court in *McHugh-Brighton v. Industrial Com.* (1969), 42 Ill. 2d 52, 56, 245 N.E.2d 480, 482:

"The definition of 'employee' in the Workmen's Compensation Act makes it clear that the basis of the relationship is a 'contract for hire, express or implied, oral or written, ***.' [Citation.] The existence of such a relationship is determined by an application of the principles that govern other contracts. [Citation.] One does not enter the employ of another without at least an implied acquiescence in the relationship."

For the reasons presented, the lack of an implied acquiescence in an employment relationship with defendants, and the absence of any genuine issue as to any material fact, we find summary judgment should be entered in plaintiff's favor on the affirmative defense.

Accordingly, the judgment of the circuit court of Peoria County is reversed and this cause remanded for further proceedings consistent with the views herein.

Reversed and remanded.

SCOTT and HEIPLE, JJ., concur.